E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
KRISTEN A. WILLIAMS (Cal. Bar No. 263594)
Deputy Chief, Major Frauds Section
DAVID H. CHAO (Cal. Bar No. 273953)
Major Frauds Section
Assistant United States Attorneys
     1100 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-0526/4586
     Facsimile: (213) 894-6269
     E-mail:    kristen.williams@usdoj.gov
                david.chao@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 21-321-ODW |
|---|---|
| Plaintiff, | GOVERNMENT'S TRIAL MEMORANDUM |
| v. | Trial Date: August 1, 2023 |
| VINCENZO RUBINO,<br>  aka "Vincent Rubino," | Trial Time: 8:30AM<br>Location:    Courtroom of the<br>             Hon. Otis D. Wright<br>             II |
| Defendant. | |

Plaintiff United States of America, its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Kristen A. Williams and David H. Chao, hereby files its Trial Memorandum.

//

//

//

The government respectfully requests leave to file additional memoranda as may become appropriate during the course of trial.

During the parties' telephonic conference on July 21, 2023, defense counsel advised the government that defendant does not object to the charge elements, government time estimate for its case-in-chief, or statement of legal issues that may arise as set forth in this memorandum, and takes no position as to the government's factual summary.

Dated: July 25, 2023     Respectfully submitted,

E. MARTIN ESTRADA
United States Attorney

MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division

/s/

KRISTEN A. WILLIAMS
DAVID H. CHAO
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

## **MEMORANDUM OF POINTS AND AUTHORITIES**

### I. CASE SCHEDULING MATTERS

This case concerns a lengthy health care fraud scheme perpetrated through the clinic defendant Vincenzo Rubino ("defendant") owned and operated: Santa Maria's Children and Family Center ("SMCFC"). A jury trial is scheduled to commence on August 1, 2023. (Dkt. 52). The estimated time for the government's case-in-chief is three to four days. Trial by jury has not been waived. Defendant has been released on bond.

The Court has granted the government's motions in limine to admit summary charts, business records, and certain evidence pursuant to Federal Rule of Evidence 404(b) (Dkt. 27, 28, 29, 42, 43), and one unopposed supplemental motion in limine seeking the admission of summary charts (Dkt. 53) remains pending.

### II. THE INDICTMENT AND ELEMENTS

Defendant was charged in an Indictment. (Dkt. 1.)

Counts one through nine charge defendant with health care fraud, in violation of Title 18, United States Code, Section 1347(a)(2), which has the following elements: (1) defendant knowingly and willfully executed a scheme or plan for obtaining money or property from a health care benefit program by means of false or fraudulent pretenses, representations, or promises; (2) the statements made or facts omitted as part of the scheme were material; that is, they had a natural tendency to influence, or were capable of influencing, a person to part with money or property; (3) the defendant acted with the intent to defraud; that is, the intent to deceive and cheat; (4) Medi-Cal was a health care benefit program; and (5) the scheme involved the delivery of or payment for health care benefits, items,

or services.  See Ninth Circuit Model Criminal Jury Instruction No. 15.42 (2022 ed.).

If the jury determines the defendant was a member of the scheme to defraud and had the intent to defraud, the defendant may be responsible for other co-schemers' actions during and in the course of and in furtherance of the scheme, even if the defendant did not know what they said or did.  For the defendant to be guilty of an offense committed by a co-schemer in furtherance of the scheme, the offense must be one that the defendant could reasonably foresee as a necessary and natural consequence of the scheme to defraud.  See Ninth Circuit Model Criminal Jury Instruction No. 15.33 (2022 ed.).

Defendant has been charged in counts 10 and 11 with aggravated identity theft, in violation of Title 18, United States Code, Section 1028A, which has the following elements:  (1) the defendant knowingly transferred, possessed, or used without legal authority a means of identification of another person, (2) the defendant knew that the means of identification belonged to a real person, and (3) the defendant did so during and in relation to a violation of 18 U.S.C. § 1347.  See Ninth Circuit Model Criminal Jury Instruction No. 15.9 (2022 ed.).  A defendant "uses" a means of identification "during and in relation to" an offense if the use of the means of identification is at the crux of what makes the predicate offense criminal; that is, the use of the means of identification had a central role in the violation of Title 18 United States Code Section 1347 (health care fraud), and was not merely ancillary to it.  The means of identification can be at the crux of the fraud where the means of identification, in particular, is used in a fraudulent or deceitful manner and where the misrepresentation about who was involved was

2


integral to the fraud.  See Dubin v. United States, 599 U.S. ___, 143 S. Ct. 1557, 2023 WL 3872518 (June 8, 2023).

A defendant acts knowingly if the defendant is aware of the act and does not act or does not fail to act through ignorance, mistake, or accident.  See Ninth Circuit Model Criminal Jury Instruction No. 4.8 (2022 ed.).  A defendant acts willfully if the defendant committed the act voluntarily and purposely, and with knowledge that his conduct was, in a general sense, unlawful.  See 18 U.S.C. § 1347(b); Ninth Circuit Model Criminal Jury Instruction No. 4.6 (2022 ed.); Bryan v. United States, 524 U.S. 184, 189-91, 193-96, 198-99 (1998); United States v. Awad, 551 F.3d 930, 937-41 (9th Cir. 2009).

**III. STATEMENT OF FACTS**

The government intends to prove at trial the following facts, among others:

Between January 2010 and continuing until at least August 2017, defendant owned and operated SMCFC, a medical clinic located in Whittier, California.  Defendant was a signatory on SMCFC's bank account and enrolled SMCFC as a provider both with the Medicaid of California program ("Medi-Cal") and the Family Planning, Access, Care, and Treatment ("Family PACT") program administered by Medi-Cal through the California Department of Health Care Services ("DHCS").  The Family PACT program provided family planning services to indigent California residents through the Medi-Cal program.  SMCFC's Whittier clinic location was the only service location that defendant enrolled with Family PACT.

The scheme worked as follows:  between no later than November 2014 and continuing until at least August 2017, defendant and his co-schemers would pay marketers like Veronica Briseno to recruit large

numbers of individuals to enroll in Family PACT, including at the Mexican consulate. These individuals often had no idea they were being enrolled in Family PACT. Defendant would then receive and cause other SMCFC employees to receive, often from Briseno, patient packets for large volumes of beneficiaries who had purportedly received examinations and other Family PACT services at locations other than SMCFC, including mobile clinics and the Mexican consulate, even though defendant knew those were not enrolled service locations and that the SMCFC medical providers had not seen – and, indeed, could not have seen -- all the beneficiaries at those locations. These beneficiary packets were often incomplete, and examination and test order forms often lacked clinician signatures. Defendant would further cause SMCFC to obtain large volumes of Health Access Program ("HAP") cards for use in enrolling beneficiaries in the Family PACT program so that claims could be submitted, even though he knew that the beneficiaries often were not receiving the cards as required and that the cards were being used to enroll beneficiaries days or weeks after the purported Family PACT services.

Defendant would cause the information from those beneficiary packets – as well as other information regarding providers, diagnoses, and procedure codes that he provided and caused others to provide to SMCFC employees – to be used to submit false and fraudulent claims to Medi-Cal for reimbursement for Family PACT that were not rendered by the providers listed in the claims, including an elderly doctor and a physician's assistant who did not even work for SMCFC at the time they purportedly rendered the services. During the scheme, SMCFC submitted more than $4.9 million in claims for Family PACT services. In reliance on the accuracy of SMCFC's claims, Medi-

Cal reimbursed SMCFC more than $2.3 million for those Family PACT claims into the SMCFC bank account controlled by defendant. Defendant received more than $468,220 from that account (despite claiming on SMCFC's tax forms that he received no compensation), and the account was used for hundreds of thousands in auto and credit card payments, including payments for at least one luxury car defendant purchased with his wife during the scheme.

Defendant also provided and caused to be provided access to SMCFC's patient records system to employees of a pharmacy owned by defendant's family members, who defendant knew would use the information for the individuals SMCFC enrolled in Family PACT -- as well as photocopied pre-signed prescriptions purportedly from SMCFC providers -- to submit false and fraudulent claims for prescriptions allegedly prescribed and provided to the beneficiaries. The pharmacy submitted approximately $708,000 in claims for filling prescriptions for those beneficiaries, and received approximately $342,000 in reimbursement for those claims. Defendant further provided order forms for laboratory testing covered under Family PACT and purportedly ordered by SMCFC providers for the same individuals SMCFC enrolled in Family PACT to a laboratory company, knowing and intending that the laboratory would use that information to submit false and fraudulent claims for testing allegedly performed on behalf the beneficiaries. The laboratory submitted approximately $1.3 million in claims for diagnostic tests for those beneficiaries, and received approximately $1.1 million in reimbursement for those claims.

**IV. EVIDENTIARY ISSUES**

    **A.   Hearsay**

Federal Rule of Evidence 801(c) defines "hearsay" as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c).

        1.   <u>Defendant's Statements</u>

The government intends to admit statements made by defendant. Statements by a party opponent when offered against that party are excluded from the hearsay definition. Fed. R. Evid. 801(d)(2)(A). Thus, defendant's statements may be admitted against him.

When the government offers some of a defendant's prior statements, the door is not thereby opened to the defendant to introduce all of his out-of-court statements because, when offered by the defendant, the statements are hearsay. <u>See</u> Fed. R. Evid. 801(d)(2); <u>United States v. Burreson</u>, 643 F.2d 1344, 1349 (9th Cir. 1981). Accordingly, exculpatory statements made by a defendant are hearsay and are not admissible at trial, when offered by the defendant. <u>See</u> Fed. R. Evid. 801(d), 802; <u>United States v. Ortega</u>, 203 F.3d 675, 682 (9th Cir. 2000).[1]

---

[1] The only recognized limitation of this principle is the "doctrine of completeness," which has been applied by some courts to admit additional portions of a defendant's prior statements where necessary to explain an admitted statement, place it in context, or avoid misleading the trier of fact. <u>See</u> Fed. R. Evid. 106; <u>Burreson</u>, 643 F.2d at 1349; <u>United States v. Marin</u>, 669 F.2d 73, 84 (2d Cir. 1982). The completeness doctrine does not require introduction of portions of a statement that are neither explanatory of, nor relevant to, the admitted passages. <u>United States v. Mitchell</u>, 502 F.3d 931, 965 (9th Cir. 2007). Nor does the doctrine apply when a government witness is merely summarizing a defendant's statements and not playing an audio recording or introducing a written statement or transcript.

6

2.  **Statements Made by Defendant's Agents**

Statements made by an agent of defendant on a matter within the scope of that agency relationship while that agency relationship existed are admissible. Fed. R. Evid. 801(d)(2)(D); Weil v. Citizens Telecom Servs. Co., LLC, 922 F.3d 993, 999 (9th Cir. 2019). "Significantly, the statements need only *concern* matters within the scope of the agency; they need not be made within the scope of the agency." In re Sunset Bay Associates, 944 F.2d 1503, 1519 (9th Cir. 1991) (emphasis in original). The existence of an agency relationship is a question for the judge under Federal Rule of Evidence 104(a) and need be proved only by substantial evidence. Hilao v. Est. of Marcos, 103 F.3d 767, 775 (9th Cir. 1996). An agency relationship between a declarant employee and a defendant employer may be established by a variety of evidence, such as that the declarant answered directly to the defendant, see Zaken v. Boerer, 964 F.2d 1319, 1322–23 (2d Cir. 1992); that the declarant reported directly to the defendant, who owned the company, see United States v. Paxson, 861 F.2d 730, 734 (D.C. Cir. 1988); that the declarant was hired by the defendant and worked on matters in which the defendant actively involved, see United States v. Draiman, 784 F.2d 248, 256–57 (7th Cir. 1986); or that the defendant "directed [the declarant's] work on a continuing basis," Boren v. Sable, 887 F.2d 1032, 1041 (10th Cir. 1989).

Here, the government anticipates that the testimony and evidence will show that individuals such as Tony Asaad, Mary Rubino, and Veronica Briseno were formerly employed by defendant at SMCFC and reported to and carried out work directed by defendant, such that

7

their statements in these contexts are admissible against defendant under Rule 801(d)(2).

### 3. Co-Conspirator Statements

Statements made by defendant's co-schemers may also be introduced, provided they meet the requirements of Rule 801(d)(2)(E). See Bourjaily v. United States, 483 U.S. 171, 183 (1987). Rule 801(d)(2)(E) requires a foundation, established by a preponderance of the evidence, that: (1) the declaration was made during the life of the scheme; (2) the declaration was made in furtherance of the scheme; and (3) there is, including the co-scheme's declaration itself, sufficient proof of the existence of the scheme and defendant's connection to it. Bourjaily, 483 U.S. at 173, 175, 181; United States v. Smith, 893 F.2d 1573, 1578 (9th Cir. 1990).

Defendant and Briseno, as well as the owners and operators of the pharmacy and laboratory to which SMCFC regularly referred SMCFC's Family PACT patients, were co-schemers in the health care fraud. Witnesses are anticipated to testify that defendant and Briseno frequently met regarding the Family PACT patient packets from the Mexican consulate and mobile clinic and pushed for ever more patients to be enrolled in Family PACT,

Moreover, the co-schemer statements anticipated to be introduced were made while the witnesses were working at SMCFC or the laboratory or pharmacy to which it referred Family PACT patients during the time when defendant owned and operated SMCFC and was causing the submission of fraudulent claims. The statements introduced will be in furtherance of that scheme, concerning issues such as billing for services not provided and pressure to enroll more patients in Family PACT so that SMCFC could submit false and fraudulent claims.

8

        4.    Adoptive Admissions

Finally, some of the documents were adopted through use by defendant (including patient file documentation used by defendant to bill Medi-Cal) and thus constitute adoptive admissions.[2] See United States v. Orellana-Blanco, 294 F.3d 1143 (9th Cir. 2002) (noting that "a signature would ordinarily make adoption plain"); United States v. Carrillo, 16 F.3d 1046 (9th Cir. 1994) (holding that a document possessed by a defendant is an adopted admission where the defendant takes some step to act on it to demonstrate more than mere possession of the document).

    **B.**    **Patient Files**

The government intends to introduce into evidence patient files obtained from SMCFC during an audit conducted by the California Department of Health Care Services ("DHCS"), seized from SMCFC by DHCS (and then subsequently from DHCS by federal agents), and seized from Office Ally, which managed SMCFC's electronic medical records.

The patient files contain fraudulent medical records. None of the documents in the patient files contains hearsay statements because they are business records, statements of the defendant or his agents, and/or statements of medical diagnosis or treatment and describe medical histories. See Fed. R. Evid. 801(d)(2)), 803(4), 803(6).

Moreover, with much of the information in the patient files (descriptions of patients' conditions and the purported services, for example), the government does not intend to offer the statements for their truth, but to show that statements and representations

---

[2] As discussed below, the patient files are admissible based on other theories as well. See infra Section IV.B.

contained within the files are false and fraudulent. See Anderson v. United States, 417 U.S. 211, 219-20 (1974) ("The election contest testimony of Tomblin and Browning, however, was not admitted into evidence in the [§] 241 trial to prove the truth of anything asserted therein. Quite the contrary, the point of the prosecutor's introducing those statements was simply to prove that the statements were made so as to establish a foundation for later showing, through other admissible evidence, that they were false."); United States v. Knigge, 832 F.2d 1100, 1108 (9th Cir. 1987) (citing Anderson).

### C. Expert Testimony

The government has noticed that it intends to introduce expert testimony from Mark Spottiswood, who is employed by DHCS as a Research Data Specialist in the Audit and Investigations Division, and has approximately seven years of experience in various auditing roles at DHCS that has made him familiar with Medi-Cal and Family PACT protocols and procedures. The government anticipates that Spottiswood will testify about, among other things, Medi-Cal and Family PACT procedures and rules, which may constitute "other specialized knowledge" that may assist the jury in determining a fact at issue pursuant to Federal Rule of Evidence 702. Spottiswood is also anticipated to testify as the materiality to Medi-Cal of certain information. This kind of testimony is proper in fraud scheme prosecutions because it goes to the victim's state of mind, and demonstrates whether the scheme was capable of misleading the victim. See Phillips v. United States, 357 F.2d 297, 307-09 (9th Cir. 1965).

Moreover, as a representative of the victim of the fraud, Spottiswood may answer hypothetical "what if" or "if you had known" questions regarding whether Medi-Cal would have paid for the services

and items at issue in this case if Medi-Cal had known of certain facts. Such testimony tends to prove the existence of the scheme to defraud, the effect that the concealed facts would have had on Medi-Cal if Medi-Cal had known them, the materiality of the concealed facts, and the deceptive nature of the representations or omissions. See United States v. Ranney, 719 F.2d 1183, 1187-89 (1st Cir. 1983); United States v. Bush, 522 F.2d 641, 649-51 (7th Cir. 1975). While the government is not required to prove that Medi-Cal was actually defrauded, it may use as proof testimony that the scheme did, in fact, deceive Medi-Cal into paying millions on false and fraudulent claims. See Phillips, 357 F.2d at 308.

The government disclosed Spottiswood's anticipated opinions to the defense, and, to date, defendant has neither requested additional disclosures relating to Spottiswood nor objected to his testimony.

### D. Authentication and Foundation

Federal Rule of Evidence 901(a) provides that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Under Rule 901(a), evidence should be admitted, despite any challenge, once the government makes a *prima facie* showing of authenticity or identification so "that a reasonable juror could find in favor of authenticity or identification . . . [because] the probative force of the evidence offered is, ultimately, an issue for the jury." United States v. Chu Kong Yin, 925 F.2d 990, 996 (9th Cir. 1991) (citations and internal quotation marks omitted); see also United States v. Black, 767 F.2d 1334, 1342 (9th Cir. 1985). The government need not establish all links in the chain of custody of an

item or call all persons who were in a position to come into contact with it. See Gallego v. United States, 276 F.2d 914, 917 (9th Cir. 1960). Alleged gaps in the chain of custody go to the weight of the evidence rather than to its admissibility. See United States v. Taylor, 716 F.2d 701, 711 (9th Cir. 1983). A duplicate is admissible to the same extent as the original, unless there is a genuine question as to the authenticity of the original or it would be unfair under the circumstances to admit the duplicate in lieu of the original. See Fed. R. Evid. 1003; Smith, 893 F.2d at 1579.

### E. Evidence Related to Victim Medi-Cal

It is well settled that negligence of a victim in failing to discover a fraudulent scheme is not a defense to criminal conduct. United States v. Lindsey, 850 F.3d 1009, 1015 (9th Cir. 2017). Thus, any evidence defendant may attempt to introduce regarding the susceptibility of Medi-Cal to fraud is irrelevant and should not be admitted. See id. (citing cases); United States v. Colton, 231 F.3d 890, 903 (4th Cir. 2000) ("The susceptibility of the victim of the fraud . . . is irrelevant to the analysis: If a scheme to defraud has been or is intended to be devised, it makes no difference whether the persons the schemers intended to defraud are gullible or skeptical, dull or bright." (internal quotation marks omitted)).

Evidence of violations of Medi-Cal or Family PACT rules and regulations can be evidence of knowledge and intent. See Awad, 551 F.3d at 940.

### F. Cross-Examination of Defendant

A defendant who testifies at trial may be cross-examined as to all matters reasonably related to the issues he puts in dispute during direct examination. "A defendant has no right to avoid cross-

examination on matters which call into question his claim of innocence." United States v. Miranda-Uriarte, 649 F.2d 1345, 1353-54 (9th Cir. 1981).

Defendant's credibility will be crucial if he chooses to testify in order to refute the government's showing of knowledge and intent. Indeed, because defendant is the only witness with "direct" evidence of his own knowledge and intent, if he takes the stand to deny any knowledge of the fraud, his credibility becomes a key issue.

Moreover, the government is not required to provide notice of matters about which it may seek to cross-examine defense witnesses, including defendant, should they testify.

### G. Defense Witnesses

To date, defendant has neither provided a witness list to the government nor identified any witnesses he intends to call. To the extent defendant elects to call witnesses at trial, the government requests that the Court order defendant to disclose their names and dates of birth at least 24 hours in advance of their testimony, and to provide an offer of proof with respect to the anticipated testimony of those witnesses if their relevance is not immediately apparent so that the government may assess whether their testimony would be relevant and otherwise admissible, and whether their testimony would implicate any Fifth Amendment rights those witnesses might have, before the witnesses take the stand.

### H. Character Evidence

The Supreme Court has recognized that character evidence – particularly cumulative character evidence – has weak probative value and great potential to confuse the issues and prejudice the jury. See Michelson v. United States, 335 U.S. 469, 480, 486 (1948). The

Court has thus given trial courts wide discretion to limit the presentation of character evidence. Id.

In addition, the form of the proffered evidence must be proper. Federal Rule of Evidence 405(a) sets forth the sole methods by which character evidence may be introduced. It specifically states that, where evidence of a character trait is admissible, proof may be made in two ways: (1) by testimony as to reputation and (2) by testimony as to opinion. Thus, a defendant may not introduce specific instances of his or her good conduct through the testimony of others. See Michelson, 335 U.S. at 477. On cross-examination of a defendant's character witness, however, the government may inquire into specific instances of a defendant's past conduct relevant to the character trait at issue. See Fed. R. Evid. 405(a). In particular, a defendant's character witnesses may be cross-examined about their knowledge of the defendant's past crimes, wrongful acts, and arrests. See Michelson, 335 U.S. at 481. The only prerequisite is that there must be a good faith basis that the incidents inquired about are relevant to the character trait at issue. See United States v. McCollom, 664 F.2d 56, 58 (5th Cir. 1981).

**I.     Reciprocal Discovery and Expert Disclosures**

The United States has requested reciprocal discovery, Jencks material, and expert disclosures from defendant. To date, the government has not received any reciprocal discovery, including any planned exhibits or witness statements from any witnesses defendant intends to call at trial. Thus, to the extent defendant may attempt to introduce or use any documents at trial that he was obligated to, but did not produce, the United States reserves the right to object and to seek to have such documents precluded.

**J.     Jury Nullification**

The Court should exclude any evidence and/or argument relating to or concerning any possible jury nullification defense. This includes any evidence and/or argument meant to play on the jury's sympathy for defendant.

It is well established that a defendant does not have a right to a jury nullification instruction. United States v. Powell, 955 F.2d 1206, 1213 (9th Cir. 1992). Having no right to seek jury nullification, defendant has no right to present evidence relevant only to such a defense. Zal v. Steppe, 968 F.2d 924, 930 (9th Cir. 1992) (Trott, J., concurring) ("[N]either a defendant nor his attorney has a right to present to a jury evidence that is irrelevant to a legal defense to, or an element of, the crime charged. Verdicts must be based on the law and the evidence, not on jury nullification as urged by either litigant.").

Since they do not make any fact in issue more or less probable, evidence and arguments meant to play on the jury's sympathy are not relevant under Federal Rule of Evidence 401 and must be excluded on that basis. In addition, appeals to sympathy are unduly prejudicial and confusing to the jury and misleading under Rule 403 and, therefore, properly excluded on that basis even if they had some arguable relevance.