E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
JONATHAN GALATZAN
Assistant United States Attorney
Chief, Asset Forfeiture & Recovery Section
TARA B. VAVERE (Cal. Bar No. 279470)
Assistant United States Attorney
Asset Forfeiture & Recovery Section
    1400 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-5901
    Facsimile: (213) 894-0142
    E-mail:    Tara.Vavere@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | Case No. 2:21-cr-00321-ODW |
|---|---|
| Plaintiff, | **APPLICATION FOR ENTRY OF MONEY JUDGMENT OF FORFEITURE AGAINST DEFENDANT VINCENZO RUBINO; DECLARATION OF TARA B. VAVERE** |
| v. | |
| VINCENZO RUBINO Aka "Vincent Rubino," | |
| Defendant. | |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Kristen A. Williams, David H. Chao, and Tara B. Vavere, respectfully submit this Application for Entry of a Money Judgment of Forfeiture against defendant Vincenzo Rubino ("defendant") in the amount of $2,308,028.23.

This Application is based upon the attached memorandum of points and authorities, the accompanying declaration of Tara B. Vavere and exhibits thereto, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: December 22, 2023         Respectfully submitted,

E. MARTIN ESTRADA
United States Attorney

MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division

JONATHAN GALATZAN
Assistant United States Attorney
Chief, Asset Forfeiture & Recovery Section

       /s/
TARA B. VAVERE
Assistant United States Attorney
Asset Forfeiture & Recovery Section

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.  INTRODUCTION**

On August 3, 2023, on what was to be the third day of his jury trial, defendant entered a plea of guilty to all eleven counts of the Indictment, which charged defendant with nine counts of health care fraud, in violation of 18 U.S.C. § 1347(a)(2), and two counts of aggravated identity theft, in violation of 18 U.S.C. § 1028A.  Dkt. No. 71.  Defendant's sentencing is scheduled for January 22, 2024.  Id.

Pursuant to the forfeiture allegation in the Indictment, the government respectfully submits that as part of the financial component of defendant's sentence in this case, the Court should enter a money judgment of forfeiture in the amount of $2,308,028.23.  This amount reflects financial benefits received by defendant in return for the criminal conduct to which he pled guilty and as was established through the evidence admitted at trial.  This money judgment is necessary and appropriate in order to forfeit illegal payments defendant received based on his participation in the offenses of conviction in this case.

**II.  STATEMENT OF FACTS**

    **A.  The Allegations in the Indictment**

The Indictment in this case charged defendant in counts one through nine with committing health care fraud from November 2014 through August 2017 in violation of 18 U.S.C. § 1347(a)(2).  Dkt. No. 1 ¶¶ 23-28.  The Indictment also charged defendant in counts ten and eleven with aggravated identity theft in violation of 18 U.S.C. § 1028A.  Id. at ¶ 29-32.  As described in more detail below, counts

1

one through nine were based on defendant submitting, and causing to be submitted, to Medi-Cal false and fraudulent claims for services that were never provided to beneficiaries.  Counts ten and eleven were based on defendant's use of an identification that defendant knew belonged to another person during and in relation to the healthcare fraud.

The Indictment contained a criminal forfeiture allegation pursuant to 18 U.S.C. § 982(a)(7).  Id. at 12.  In the forfeiture allegation, the government gave notice that "in the event of defendant's conviction under any of counts one through eleven of this Indictment," the government would seek forfeiture as part of any sentence.  The government gave notice of its intent to forfeit property that constitutes or is derived from gross proceeds traceable to the offenses charged in the Indictment and that it may seek a judgment for a sum of money equal to the total amount of money involved in each offense of which defendant was convicted.  Id.

As described in the indictment, defendant owned and operated a medical clinic, Santa Maria's Children and Family Center ("SMCFC"), from 2010 through at least August of 2017.  Id. at ¶¶ 2 and 23. Defendant was a signatory on SMCFC's bank account and enrolled SMCFC as a provider both with the Medicaid of California program ("Medi-Cal") and the Family Planning, Access, Care, and Treatment ("Family PACT") program administered by Medi-Cal.  Id. at ¶ 3-4.  Defendant and others recruited large numbers of individuals to enroll in Family PACT and received beneficiary packets for beneficiaries who had purportedly received examinations and other Family PACT services, including at mobile clinics and the consulate of a foreign country even though defendant knew that those locations were not service

locations enrolled with the Family PACT Program for SMCFC and that SMCFC providers had not seen all of those beneficiaries at those locations. Id. at ¶ 24. The beneficiary packets were often incomplete, and examination and test order forms often lacked clinician signatures. Id. Defendant would further cause SMCFC to obtain large volumes of Health Access Program cards for use in enrolling beneficiaries in the Family PACT program so that claims could be submitted, even though defendant knew that the beneficiaries often were not receiving the cards as required and that the cards were being used to enroll beneficiaries days or weeks after the purported Family PACT services. Id.

In reliance on the information in SMCFC's claims regarding the services allegedly provided and the providers allegedly providing them at SMCFC, the Medi-Cal program reimbursed SMCFC for the Family PACT services, initially through checks and later through direct deposits into the SMCFC Account. Id.

**B. The Evidence Presented at Trial Established the Amount of Fraudulent Claims that Were Paid**

Aren Alexander, a Special Agent with the Office of Inspector General, U.S. Department of Health and Human Services, testified about his analysis of the fraudulent claims and prepared summary exhibits that were admitted at trial or, with respect to those related to the portion of Agent Alexander's anticipated testimony that was preempted by defendant's entry of a guilty plea, were exhibits to which the parties had stipulated, see Dkt. No. 66. Agent Alexander testified that defendant caused SMCFC employees to use the information from the beneficiary packets to submit false and fraudulent claims to Medi-Cal for reimbursement for Family PACT that

were not rendered by the providers listed in the claims.  During the scheme, SMCFC submitted more than $4.9 million in claims for Family PACT services.  See Trial Exhibit 603, attached to the Vavere Declaration as Exhibit A.  In reliance on the accuracy of SMCFC's claims, Medi-Cal reimbursed SMCFC more than $2,308,028.23 for those Family PACT claims into the SMCFC bank account controlled by defendant.  See id.  Defendant received more than $468,220 from the SMCFC bank account (despite claiming on SMCFC's tax forms that he received no compensation), and the account was used for hundreds of thousands in auto and credit card payments, including payments for two luxury cars defendant purchased with his wife during the scheme.  See Stipulated Exhibit 602, attached to the Vavere Declaration as Exhibit B; Stipulated Exhibits 512-515, attached to the Vavere Declaration as Exhibit C (relating to defendant's 2014 and 2016 purchase of and payments on luxury cars).

    **C.    The Defendant's Guilty Plea**

On what was to be the third day of trial and the conclusion of the presentation of the government's case-in-chief, defendant pled open to all counts of the indictment.  Dkt. No. 71.  The parties agreed to, and the Court found, a factual basis that described the submission of the fraudulent healthcare claims and supported the plea of guilty to all counts.

**III. LEGAL STANDARD**

When the government has given notice in the indictment of its intent to seek forfeiture, the Court may enter a judgment of forfeiture as part of defendant's sentence.  See Fed. R. Crim. P. 32.2(a).  "If the government seeks a personal money judgment, the

court must determine the amount of money that the defendant will be ordered to pay." Id. at 32.2(b)(1)(A).

The Ninth Circuit has held that Rule 32.2 "does not permit the district court to do anything other than 'determine the amount of money that the defendant will be ordered to pay,' in an amount determined by statute." United States v. Phillips, 704 F.3d 754, 771 (9th Cir. 2012). "Those proceeds need not be in defendant's possession at the time of sentencing; in fact, imposition of forfeiture is still necessary even if defendant has no assets to forfeit." Id.; see also United States v. Casey, 444 F.3d 1071, 1074 (9th Cir. 2006) (forcing a defendant to disgorge his ill-gotten gains, "even those already spent," ensures that defendants do not benefit from their crimes); United States v. Misla-Aldarondo, 478 F.3d 52, 73-74 (1st Cir. 2007) ("If the government has proven that there was at one point an amount of cash that was directly traceable to the offenses, and that thus would be forfeitable . . ., that is sufficient for the court to issue a money judgment, for which the defendant will be fully liable whether or not he still has the original corpus of tainted funds – indeed, whether or not he has any funds at all.").

A forfeiture order must be entered at or before sentencing. Fed. R. Crim P. 32.2(b)(2). The order becomes final as to the defendant at sentencing and must be included in the oral pronouncement of sentence and noted in the judgment and commitment order. Id., at 32.2(b)(4).

///

**IV. ARGUMENT**

    **A. The Entry of a Money Judgment of Forfeiture is Appropriate in this Case Pursuant to 18 U.S.C. § 982**

The proposed money judgment of forfeiture accompanying this application is warranted based on defendant's guilty plea to the offenses set forth in counts one through eleven of the Indictment.

Defendant's guilty plea to nine violations of 18 U.S.C. § 1347(a)(2) (Health Care Fraud) and two violations of 18 U.S.C. §1028A(a)(1) (Aggravated Identity Theft), gives rise to forfeiture pursuant to 18 U.S.C. § 982, which provides for forfeiture of "Any property, real or personal, that constitutes or is derived, directly or indirectly, from the gross proceeds traceable to the commission of any offense of conviction."

The entry of a money judgment of forfeiture is therefore appropriate here. 18 U.S.C. § 982(a)(7) provides that the court, in imposing sentence on a person convicted of a Federal health care offense, shall order the forfeiture of any property that "constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense. Here, defendant received illegal proceeds of the offenses for which he pled guilty, namely $2,308,028.23 in payments made by Medi-Cal based on fraudulent claims to the SMCFC bank account defendant controlled. See United States v. Casey, 444 F.3d 1071, 1074 (9th Cir. 2006) (imposing a money judgment at sentencing ensures that, in the end, a criminal does not benefit from his criminal activity).

///

### B. The Court Should enter a Money Judgment of Forfeiture in the Amount of $2,308,028.23

In determining the amount of the money judgment, the Court may rely upon evidence admitted at trial and already in the record, such as in the parties' stipulation regarding trial exhibits. See Fed. R. Crim. P. 32.2(b)(1)(B); Dkt. No. 66. The government has the burden of establishing the amount of the money judgment by a preponderance of the evidence. See United States v. Christensen, 828 F.3d 763, 822 (9th Cir. 2015) (district court or jury need only find facts warranting forfeiture by a preponderance of the evidence); see also Fed. R. Crim. P. 32.2, Committee Notes (2000) (explaining that "the government must establish the forfeitability of the property by a preponderance of the evidence").

The evidence admitted at trial and stipulated to by the parties, taken together with the factual basis supporting the open guilty plea, more than meets the preponderance standard. At trial, the government established that defendant, through SMCFC, received $2,308,028.23 from Medi-Cal based on fraudulent claims. Consequently, the proceeds of defendant's convictions on counts one through eleven is no less than $2,308,028.23. This is the amount that the defendant should be ordered to forfeit as part of his sentence in this case.

### C. An Evidentiary Hearing is Unnecessary

Pursuant to Fed. R. Crim. P. 32.2(b)(1)(B), a court's determination on forfeiture "may be based on evidence already in the record, including any written plea agreement, and on any additional evidence or information submitted by the parties and accepted by the court as relevant and reliable" and "[i]f the forfeiture is

7

contested, on either party's request the court must conduct a hearing after the verdict or finding of guilty."

A defendant's right to a hearing, however, is not license to relitigate evidence already admitted into the record. In United States v. Harris, the Ninth Circuit held that a defendant may not use a hearing on potential money judgment of forfeiture as an opportunity for a second chance at challenging evidence already admitted at trial. See 842 F. App'x 28, 32 (9th Cir. 2020) ("The district court held that expert testimony was unnecessary because the government's forfeiture calculations rested on the trial evidence, not extrapolation or sampling, and that Harris sought to challenge the trial evidence improperly. . . Thus, the district court did not abuse its discretion by refusing to hold an evidentiary hearing on forfeiture."). Here, the government relies on evidence already entered into the record, and thus, like in Harris, an evidentiary hearing is neither necessary nor appropriate.

**V. CONCLUSION**

For the foregoing reasons, the government respectfully requests that the Court grant the government's Application and requests that the Court enter the Proposed Money Judgment lodged contemporaneously with this application.

///

8

| | | |
|---|---|---|
| 1 | Dated: December 22, 2023 | Respectfully submitted, |
| 2 | | E. MARTIN ESTRADA<br>United States Attorney |
| 3 | | |
| 4 | | MACK E. JENKINS<br>Assistant United States Attorney<br>Chief, Criminal Division |
| 5 | | |
| 6 | | JONATHAN GALATZAN<br>Assistant United States Attorney<br>Chief, Asset Forfeiture & Recovery Section |
| 7 | | |
| 8 | | _____/s/_____ |
| 9 | | TARA B. VAVERE<br>Assistant United States Attorney<br>Asset Forfeiture & Recovery Section |
| 10 | | |
| 11 | | Attorneys for Plaintiff<br>UNITED STATES OF AMERICA |

9